Donahue, J.,
dissenting. It is not now important to discuss the question whether Section 2 of the act of the general assembly, passed April 21, 1904 (97 O. L., 254), fixing the annual compensation of county commissioners, repealed by implication Section 2813a, Revised Statutes.
Beyond all question the laws fixing a sum certain as salaries and compensation for county officers were enacted in response to a popular demand that the iniquitous fee system be abolished in Ohio, and it was evidently the intent and purpose of the general assembly of Ohio to abolish all forms of fees for county officers, in so far as it was possible, without inequality in the compensation paid to the same officers in the several counties of the state, but the legislature did recognize the fact that county officers should be paid fees in some cases at least, and specifically provided in this act itself that $3 per day should be paid for the time each commissioner was actually employed in ditch work.
This was absolutely necessary in order that there might be equality in the compensation paid for the services of these officers in the various counties. In some counties there might be no ditch work, in others very little, while in still others a very great amount. A fixed salary large enough to include reasonable fees for these services in some counties would be too large in others.
This section specifically declared that the compensation provided therein should be in full payment of all services rendered as such commissioners.
At the time this act became a law Section 2813a, *71 Revised Statutes, provided that the county commissioners, for services performed by them as members of the board of equalisation, would be entitled to receive $3 per day.
The act of April 21, 1904, did not in express terms repeal this section, and unless it did repeal it by implication then both of these statutes were the law of Ohio up until the 14th day of February, 1910.
On that date the general assembly passed the General Code, which is a compilation and a revision of all the laws in force at that time, and in this General Code, Section 2813a, was rewritten and numbered Section 5597, General Code, and it was after the passage of this General Code that the services were performed by the defendant in error in this case.
It is therefore not important whether Section 2813a, Revised Statutes, was unrepealed or repealed in express terms or by implication. The adoption of the General Code reenacted it into a law. Section 1 of Article II of the Constitution of 1851, then in force in this state, vested all legislative power in the general assembly. The judicial power of the state is vested in the courts of this state, and the courts discharge their full duty when they interpret, construe and administer the laws as given by the lawmaking power of the státe.
It is insisted, however, that because of the fact that this section was reenacted in the General Code, the same was inadvertently done by the legislature, and that it was not its purpose and intention so to do. In answer to that contention it is sufficient *72 to say that the general assembly of the state is presumed to have intelligence enough to discharge its duties to the state, and to know what it intends to do better than any coordinate branch of the government can possibly know. The very fact that it did this is sufficient for the purpose of this case.
If the legislature did pass this law inadvertently, it was the duty of the legislature, not the courts, to repeal it. During the time between its passage and repeal it must be given the same force and effect as any other statute of the state. There are perhaps a great many statutes that the courts and the people of the state may think are ill advised, unwise or unnecessary, but if the courts were to select out these statutes and declare that they could not be given any force or effect, because in the opinion of the court the legislature must have passed them inadvertently or through mistake as to their wisdom and necessity or because they seem to be in conflict with a policy evidenced by former statutes enacted by the same authority, it would be a clear and inexcusable usurpation of power and a direct interference with the constitutional authority of a coordinate branch of this government. That the legislature did intend to reenact this statute in the General Code, and that it is still satisfied therewith and believes it to be a wise and necessary measure, is so clearly evidenced by the act of the general assembly passed May 31, 1911, and approved by the governor of the state on the 7th day of June, 1911 (102 O. L., 277-279), that it is now beyond reasonable dispute, for in this later act it expressly repealed that section and reenacted it into another *73 revision and codification of the laws of the state relating to the same subject-matter, and in this connection declared each section of this later act, including Section 5597, General Code, to be independent sections, and that the invalidity of one should in nowise affect the validity of the other.
As evidence of the fact that the general assembly did not believe that Section 2 of the act of April 21, 1904, relating to ■ the compensation and fees of county commissioners, was in conflict with the provisions of Section 2813a, Revised Statutes, and as evidence that it had intentionally and purposely and intelligently reenacted the latter section into the General Code under the sectional numbering 5597, on the same day it repealed and reenacted Section 5597 into the general revision of the laws relating to that subject, as above stated, it enacted into a law House Bill No. 183 (102 O. L., 514), entitled: “An act to amend Section 3001 of the General Code, relating to the compensation of county commissioners.” Section 3001 of the General Code was identical with the act passed April 21, 1904, fixing the annual compensation of the county commissioners. This act, passed May 31, 1911, amending Section 3001, after providing for the compensation of commissioners and $3 per day in addition thereto for the time actually employed in ditch matters, also provides that such compensation should be in full of all services rendered as such commissioners. Having provided, in a separate act passed the same day, that commissioners, while acting as members of the quadrennial county board of equalization, should receive *74 the sum of $3 per. day for each day necessarily employed in the performance of these duties and the duties as members of the board of revision, certainly and surely it intended to distinguish between their duties as commissioners, for which a sum certain is to be paid in each county, and their duties as members of the quadrennial county board of equalization and the board of revision, for which it provided a separate and distinct compensation, otherwise the general assembly committed an inexcusable folly. This authority for the payment of $3 per day for each day employed in discharging the duties of the board of equalization and the board of revision, is just as plain and explicit as the provision for the payment of $3 per day to each commissioner for the time he is actually employed in ditch work.
The attorney general in his brief in this case concedes that since the two separate acts of May 31, 1911, became the law of this state, the commissioner is entitled to this compensation, and the only reason urged against his right to this compensation in 1910 is based upon the decision in The State, ex rel., v. Comrs. of Shelby County, 36 Ohio St., 326, wherein it is held that “Where an act of the legislature, or several acts in pari materia, have undergone revision, the same construction will prevail as before revision, unless the language of the new act plainly requires a change of construction, to conform to the manifest intent of the legislature.”
This is undoubtedly an established rule of construction in this state, but that does not mean that *75 where a statute has been repealed, either in express terms or by implication, and when it is rewritten into and becomes a part of the revision of the laws relating to the same subject-matter, and has in this manner again found its way into the statutory law of the state, a court will hold that it is still repealed, because it would have so held had the question been raised between the date of its repeal and the date of its reenactment into law.
This proposition seems to be too plain to require further argument. The constitution of Ohio has committed to the general assembly of Ohio the authority to enact the laws of this state, and at the time these laws were enacted that body was the sole lawmaking power of the state. No one questions the constitutionality of either of these acts; therefore a court should not assume any authority not conferred upon it by the constitution of the state, nor attempt to measure its wisdom with the wisdom of the constitutional authority charged with the duty of enacting the laws and declaring the legislative policy of this state.
By reason of this valid and existing statute, in force at the time these services were performed, this commissioner is just as much entitled to these fees as the governor of this state or the respective members of this court are entitled to their salaries which are fixed and determined by the same authority.
There is no public policy in this state that prevents it from dealing fairly and honestly with its public officials, or prevents it from paying to any official, state or county, the salary and compensa *76 tion that by statute it agreed to pay when the people elected him to that office.
Undoubtedly the taxpayers of this state demand economy in the administration of public affairs, but undoubtedly they are equally a unit in the demand that the state or county, or other public subdivision, shall deal as fairly and honestly with their public servants as each individual taxpayer would deal with a private employe of his own, and for that reason I cannot concur in the judgment entered in this case.
Newman, J., concurs in dissenting opinion.